1998-NMCA-031

954 P.2d 755

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jose ANDRADE, Defendant–Appellant.**

**No. 17140.**

Court of Appeals of New Mexico.

Dec. 15, 1997.

Certiorari Denied Feb. 3, 1998.

Tom Udall, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## *OPINION* [1]

HARTZ, Chief Judge.

{1} Defendant appeals his conviction of aggravated burglary. He contends that the district court erred in the following respects: (1) refusing to give lesser-included-offense instructions on criminal trespass and breaking and entering, (2) permitting testimony about his prior shoplifting and battery offenses, (3) tolerating prosecutorial misconduct, (4) refusing to admit into evidence letters from Helen Garcia (the Victim) to Defendant, and (5) imposing an unlawful condition of probation. We affirm the conviction but set aside the challenged condition of probation.

## I. LESSER–INCLUDED–OFFENSE INSTRUCTIONS

{2} The State's version of events was as follows: On December 10, 1994 Victim went dancing at a bar with her friend, Nellie Ulibarri. When Defendant arrived at the dance, he threatened to kill Victim if she danced with another man. Victim promptly proceeded to dance with another man. Some time later Victim and Ulibarri finished their drinks and walked to Ulibarri's apartment. Shortly after arriving at the apartment, the women heard Defendant hitting the door to

---

1. This opinion is substituted for the opinion filed on November 4, 1997. Defendant's motion for rehearing is denied.

the apartment and threatening to kick it in if they did not open it. Defendant also yelled that he was going to kill Victim. Despite efforts of the women to prevent his entry, Defendant kicked the door in, entered, and hit Victim in the chest with a concrete brick. As Victim attempted to defend herself, Ulibarri ran to get help at the nearby apartment of Victim's daughter, Phyllis Cordova. Ulibarri then returned with Cordova, while Cordova's boyfriend called the police. Defendant, after beating Victim and pulling out some of her hair, attempted to flee, but was blocked by the women. Officer Calvin Wiggins arrived about five minutes after the assault began. He found Defendant in the apartment and seized a brick in the apartment. (He testified that he found the brick on the kitchen table, but Victim testified that he found it on the bed.)

{3} Defendant's version of events was rather different. He never threatened Victim at the bar. During the dance he met a man named "Choperito," a former boyfriend of Ulibarri, who invited him to walk to a friend's home for a drink. When they arrived at a nearby apartment, however, Choperito picked up a large concrete block, threw it at the door, and ran away. Defendant was surprised to see that it was Victim and Ulibarri who opened the door to the apartment. He never entered the apartment. Rather, Victim came out of the apartment and began beating him.

{4} Defendant's version was corroborated by Leopoldo Lopez. Lopez saw Defendant leave the dance with another man and walk down a street. A short time later Lopez saw the other man run back to the parking lot and speed away in his car. Worried about Defendant, Lopez drove down the street, where he saw Victim sitting on top of Defendant, beating him. Lopez made no effort to stop the fight nor did he call the police.

{5} Aggravated burglary is defined as follows:

> Aggravated burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with intent to commit any felony or theft therein and the person either:
>
> A. is armed with a deadly weapon;
>
> B. after entering, arms himself with a deadly weapon;
>
> C. commits a battery upon any person while in such place, or in entering or leaving such place.

NMSA 1978, § 30-16-4 (1963). Battery is defined as "the unlawful intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30-3-4 (1963). Aggravated battery is battery committed with intent to injure another person. NMSA 1978, § 30-3-5(A) (1969). Aggravated battery becomes a felony when the battery "inflict[s] great bodily harm or [is committed] with a deadly weapon or ... in any manner whereby great bodily harm or death can be inflicted." Section 30-3-5(C).

{6} The district court instructed the jury that Defendant committed aggravated burglary if he (1) entered the residence of Nellie Ulibarri without permission, (2) entered the residence with the intent to commit aggravated battery when he got inside, and (3) while inside "touched or applied force to [Victim] in a rude or angry manner."

{7} Defendant tendered two lesser-included-offense instructions, one for criminal trespass and one for breaking and entering. The tendered instruction on criminal trespass stated the elements of the offense as follows:

1. The Defendant entered Nellie Ulibarri's residence without permission.

2. The Defendant damaged the door and door latch.

See NMSA 1978, § 30-14-1 (1991); UJI 14-1403, NMRA 1997. The tendered instruction on breaking and entering set forth similar elements:

1. The Defendant entered Nellie Ulibarri's residence without permission.

2. The entry was obtained by the breaking of the door latch.

See NMSA 1978, § 30-14-8 (1981); UJI 14-1410, NMRA 1997.

{8} "A defendant is entitled to a lesser-included offense instruction only if there is evidence tending to establish the lesser offense, and there must be some view of the evidence tending to establish that the lesser offense is the highest degree of crime committed." *State v. Wilson,* 117 N.M. 11, 14, 868 P.2d 656, 659 (Ct.App.1993), *writ quashed,* 119 N.M. 311, 889 P.2d 1233 (1995). Defendant contends that his tendered lesser-included-offense instructions were appropriate because the jury could have viewed the evidence as establishing that he broke into the apartment but did not intend to commit aggravated battery when he entered or did not commit a battery while there.

{9} Defendant's argument may have some appeal as a theoretical matter, but as a practical matter the jury could reach such a determination only through unrealistic mental gymnastics, picking and choosing portions of testimony from witnesses who totally contradicted one another. Defendant, after all, not only denied the battery, he denied entering the apartment. "[T]here must be some evidence other than that obtained by taking portions of the victim's and portions of the defendant's testimony to support the lesser-included offense instruction." *Id.* at 15, 868 P.2d at 660.

{10} Indeed, defense counsel's argument at trial in support of the tendered instructions did not suggest the possible view of events that is urged on appeal. The only versions she suggested were that (1) Defendant threw the brick at the door without ever entering the apartment or battering Victim or (2) he never threw the rock and Victim came outside, where the battery occurred. As noted by the district court, those versions of the encounter could be appropriate contentions for final argument. Under neither version, however, would Defendant be guilty of either breaking and entering or criminal trespass.

{11} The purpose of a lesser-included-offense instruction when requested by the defendant is to protect the defendant from the possibility that jurors who are not convinced of his guilt of the charged offense would nonetheless convict him of the offense because they are convinced that he committed a crime (the lesser-included offense) and believe that he should be punished but are presented with an all-or-nothing choice between convicting of the charged offense or acquittal. "There is a legitimate concern that conviction of the greater offense may result because acquittal is an alternative that is unacceptable to the jury." *State v. Meadors,* 121 N.M. 38, 52, 908 P.2d 731, 745 (1995) (Ransom, J., specially concurring); *see Beck v. Alabama,* 447 U.S. 625, 633–35, 100 S.Ct. 2382, 2387–88, 65 L.Ed.2d 392 (1980). We are confident that the rationale for requiring lesser-included-offense instructions does not apply here. The district court's rejection of the tendered instructions was proper because of the great unlikelihood that a rational jury would find that the most severe offense committed by Defendant was breaking and entering or criminal trespass.

## II. EVIDENCE OF PRIOR OFFENSES

{12} Defendant argues that he was denied a fair trial because of the admission of testimony about prior arrests and by repeated questioning by the prosecutor concerning prior arrests. Defendant raises a serious concern. Our rules of evidence, following longstanding legal tradition, insist that a defendant not be convicted by a jury simply on evidence that the defendant is a bad person. *See* Rule 11–404, NMRA 1997. Evidence of a defendant's prior misconduct ordinarily is not admissible to support the inference that the defendant has a propensity to commit unlawful acts and therefore is likely to have committed the charged act. New Mexico has been particularly strict in limiting evidence of prior crimes. *See State v. Wrighter,* 1996 NMCA 077, 122 N.M. 200, 922 P.2d 582. Thus, we view with a jaundiced eye the testimony at trial regarding Defendant's prior shoplifting and assaults on Victim. Nevertheless, a close analysis of what happened at trial convinces us that there was no reversible error.

{13} The day before trial Defendant filed a motion in limine to prohibit any testimony "about his prior arrests in the Municipal Court." The court conducted a hearing on Defendant's motion and an unrelated motion in limine filed by the State. The hearing was

brief. The district court's chief concern was the untimeliness of the motions. There was some discussion regarding the merits of the State's motion, but neither the attorneys nor the court addressed the merits of Defendant's motion. Nevertheless, the court announced that it would grant both motions. Shortly before the start of trial the next day, the court filed an order granting Defendant's motion, which it characterized as a motion "to exclude the defendant's prior arrests for battery and shoplifting."

{14} Despite the order, evidence of Defendant's shoplifting came out in the State's case in chief. On cross-examination of Victim, Defendant's attorney asked: "When you lived with [Defendant] did he support you? Did he give you his paycheck?" Victim responded: "He used to shoplift a lot, and he used to give me $20 probably once a week. That's his work—shoplifting." What happened next was bizarre. Without any reference to the order granting Defendant's motion in limine, defense counsel moved to strike the testimony because it was not responsive to her question. The judge denied the request, stating that it was "up to the jury to decide the credibility of that statement." Defense counsel then promptly proceeded to question Victim regarding whether she shoplifted with Defendant, whether he brought things home to her, and whether Defendant's shoplifting supported her. On redirect the State asked Victim, without objection, whether she was a shoplifter, whether she had ever been arrested, and whether Defendant had ever been arrested. Victim testified that Defendant had been arrested "a lot of times."

{15} Clearly, Defendant did not preserve for review the claim of error he is making on appeal—that evidence of his shoplifting was inadmissible character evidence. He did not argue that point to the district court, nor did he even mention the court's order (although the order related only to arrests, not the actual misconduct itself). A question is preserved for review only when a ruling by the trial court has been fairly invoked. Rule 12–216(A), NMRA 1997; *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986).

{16} Despite this lack of preservation, we cannot ignore Defendant's contentions. On occasion we must consider claims of error not preserved below. Under the fundamental-error doctrine we will reverse a conviction despite lack of preservation "when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066 (1997); *see* Rule 12–216(B)(2), NMRA 1997. Evidence of a defendant's prior criminal misconduct may be so improperly prejudicial that its admission constitutes fundamental error.

{17} Here, however, several considerations that appear from the record convince us that there was no fundamental error. First, Defendant took the stand in his own defense. Once he took the stand, ordinarily the prosecution would be entitled to cross-examine him regarding dishonest acts, such as shoplifting, to impeach his credibility. *See* Rule 11–608(B), NMRA 1997. Moreover, Defendant was questioned by his own attorney on direct examination regarding shoplifting. Indeed, Defendant attempted to use the shoplifting to support his theory of the case—that Victim was the aggressor—by testifying that Victim intimidated him and compelled him to shoplift to get things that she wanted. Apparently, Defendant's trial strategy was to testify to a version of events directly contradictory to Victim's and, recognizing that his shoplifting would likely be elicited on cross-examination, to attempt to use that shoplifting to support his theory of the case. If this is so, the evidence of shoplifting was destined to be presented to the jury in any event, and the issue that concerned Defendant was only one of timing. We will not find fundamental error simply because evidence was admitted prematurely. *See Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066; *cf. State v. Altgilbers*, 109 N.M. 453, 472, 786 P.2d 680, 699 (Ct.App. 1989) (court is reluctant to find fundamental error when to do so would permit sandbagging of opposing counsel by failing to raise objection until appeal).

{18} We recognize, of course, that defense strategy may change after evidence is

improperly admitted, and we should not penalize a defendant for reacting appropriately to improperly admitted evidence. For that reason, we recently reversed a conviction because of improperly admitted evidence of bad character even though some such evidence could have been admitted later, after the defendant put on character witnesses in his defense. *See State v. Elinski*, 1997–NMCA–117, 124 N.M. 261, 948 P.2d 1209. In that case, however, the defendant had preserved his claim regarding the inadmissibility of the evidence. He raised the issue in a pretrial motion in limine, which was denied, and repeated his objection at trial when the evidence was offered by the State. In contrast, here Defendant did not alert the trial court to his contention that the evidence of shoplifting was improper character evidence. (Although the Victim's answer regarding Defendant's shoplifting made no reference to any arrests of Defendant, it is remarkable that defense counsel did not even alert the district court to its recent ruling excluding evidence of such arrests.)

{19} Because Defendant could properly be cross-examined regarding shoplifting if he testified in his own defense, we could find fundamental error here only were we to presume that Defendant would not have taken the stand had Victim not testified to Defendant's shoplifting. Such a presumption would be inappropriate. In her opening statement, defense counsel referred on several occasions to what Defendant would testify to. Accordingly, Defendant cannot now claim that his decision to testify resulted from the improper admission of testimony in the State's case in chief.

{20} Defendant's prior misconduct also arose in other contexts. During cross-examination of Victim, defense counsel asked if she had written an affectionate letter to Defendant while he was in jail. She answered that she had done so, but only because she was afraid of him. Defense counsel asked why she was afraid of him while he was in jail. A few moments later the prosecutor asked the same question on redirect. Victim answered that every time Defendant got out of jail, he would threaten her. The response was rele-

vant and admissible, and there was no objection.

{21} Much of the evidence regarding Defendant's prior misconduct was elicited during his own testimony. On cross-examination of Defendant the prosecutor questioned him not only about the details of his shoplifting but also about prior attacks against Victim. On direct examination, however, Defendant had testified that he had been sent to jail for allegedly assaulting Victim 15 days before the December 11 incident and that Victim had beaten him at various times, sending him to the hospital on two occasions. This testimony supported Defendant's closing argument that Victim manipulated him by beating him and falsely reporting him to the police for assault. It also was consistent with defense counsel's opening statement, in which she made the following comments: (1) Defendant and Victim had lived together four to five years in a dysfunctional relationship, drinking, fighting, and controlling one another; (2) Defendant would testify about instances in which Victim stabbed him with a knife; and (3) the jury would hear "conflicting testimony about who was beating who[m]; clearly both beat on each other." Given that Defendant opened the door regarding prior violent episodes between Defendant and Victim, he cannot complain that the State questioned him regarding who really beat whom. Such responsive evidence is admissible under the doctrine of curative admissibility, which has been adopted in New Mexico. *See State v. Baca*, 120 N.M. 383, 390 n. 2, 902 P.2d 65, 72 n. 2 (1995); 1 John Henry Wigmore, *Evidence in Trials at Common Law* § 15 (Peter Tillers rev. ed.1983). As for the prosecutor's cross-examination of Defendant regarding shoplifting, ordinarily the details of the offense would not be relevant. *See State v. Carlton*, 82 N.M. 537, 540, 484 P.2d 757, 760 (Ct.App. 1971). But once Defendant contended on direct examination that he was shoplifting to satisfy Victim's demands, the State could properly pursue cross-examination establishing that the items taken were tools and men's clothing, not items likely to appeal particularly to a woman.

{22} Defendant points out that the district court sustained some of his objections to evidence relating to prior misconduct and contends that the court was inconsistent in protecting him against such inadmissible evidence. The objections sustained by the court, however, appear to have been predicated on grounds other than violation of the bar against evidence of propensity to commit crime. One objection, which we find to be unintelligible on the tape recording of the trial, is characterized by Defendant on appeal as an argument that "there had been no previous testimony on the subject." The court sustained the objection. A second objection related to certified copies of Defendant's shoplifting convictions. Defendant had not objected to the prosecutor's cross-examining him regarding the particulars of the convictions but did object to introduction of certified copies. Defendant's objection to introduction of the documents specifically noted the pretrial motion in limine, apparently the only such reference during the trial. The court sustained the objection. Later, when the State was cross-examining Defendant regarding the precise date of his preceding arrest for assaulting Victim, Defendant objected to the prosecutor's reference to jail records that would establish the date. The court sustained Defendant's objection, which Defendant characterizes on appeal as a hearsay objection. The other challenged questioning occurred during cross-examination of defense witness Leopoldo Lopez. After Lopez acknowledged that he was a friend of Defendant, the prosecutor asked: "In fact, at this very moment, as of today, you are sharing a cell with him at the Gallup jail?" The court sustained Defendant's objection, stating that he had previously ruled that this matter would not be admissible. Moments later, however, there was no objection when the prosecutor asked the witness whether he had seen Defendant while Defendant was in jail, and the witness responded that he had seen Defendant while the witness was in jail for DWI. From the above, it does not appear that the district court ruled inconsistently on the objections presented to it. In any event, we see no indication that the court's rulings misled defense counsel to Defendant's prejudice.

{23} To sum up, the evidence and questioning regarding Defendant's prior shoplifting and assaults on Victim cause us concern. We are unsure of the grounds for some of the rulings by the district court and we are perplexed regarding defense counsel's thinking at trial regarding what evidence was admissible and what was not. Nevertheless, all but one of Defendant's objections were sustained. Also, Defendant's shoplifting was admissible to impeach his credibility, and the State's questioning of Defendant regarding his shoplifting and his prior assaults was permissible once Defendant opened the door with his own testimony regarding the purpose of his shoplifting and his claim that Victim had beaten him in the past. The case could have been tried more cleanly, but we are not convinced that there was anything approaching fundamental error.

{24} Finally, Defendant contends that he was further prejudiced by the references to his prior offenses during the State's closing argument. We find nothing improper in the prosecutor's comments on the evidence that was admitted. Defendant contends that the prosecutor went beyond the admitted evidence by pointing to the shoplifting records, which were not admitted, and stating, "Here they are: one, two, three." But Defendant made no objection to the statement at trial, and the record before us does not indicate what the prosecutor was referring to. In this circumstance, we cannot say that the prosecutor committed error, much less fundamental error.

## III. OTHER ALLEGED PROSECUTORIAL MISCONDUCT

{25} Defendant makes several claims of prosecutorial misconduct other than references to Defendant's prior offenses. First, he complains of the prosecutor's questioning of witnesses and argument to the jury suggesting that Leopoldo Lopez had concocted his story. We find nothing improper in the argument or the questioning. We note that the district court sustained one objection to the questioning, when the prosecutor inquired about the purpose of a meeting between the witness and defense counsel.

Even if the question was improper, no harm resulted.

■ {26} Nor do we find any error in comments by the prosecutor during her rebuttal closing argument. In our view the prosecutor overreacted to comments by defense counsel, but we seriously doubt that the rebuttal improperly influenced the jury.

■ {27} Defendant's remaining complaints relate to two unobjected-to matters that occurred during cross-examination of Defendant. First, the prosecutor asked Defendant if he had heard the testimony of the State's witnesses and whether those witnesses were lying. Although questions about whether other witnesses told the truth appear to be relatively common in both civil and criminal trials, we have held that they are inappropriate. *See State v. Flanagan*, 111 N.M. 93, 96–98, 801 P.2d 675, 678–80 (Ct.App.1990). Here, however, the prosecutor caused minimal damage by suggesting that one version or the other must be a lie. Defense counsel had already suggested the same during Defendant's direct examination. After noting that the three women who testified about the assault told a story very different from Defendant's, counsel asked, "Why do you believe they would lie?"

■ {28} Defendant's other complaint regarding cross-examination resulted from Defendant's use of a translator. In response to one translated question, Defendant indicated in Spanish that he did not understand, and the translator asked the prosecutor to repeat the question so that she could restate it to Defendant. The prosecutor did not restate the question, commenting: "That's all right. I think he heard." The prosecutor's comment was inappropriate. Nevertheless, the comment was unlikely to sway the jury's verdict. Defendant had testified to some extent in English during his direct examination. The jury could determine for itself whether Defendant's lack of comprehension of the question was feigned, and whether to draw an adverse inference if it was.

{29} Even taken as a whole, we do not believe that the prosecutor's conduct came close to creating fundamental error. We do not, however, intend to indicate approval of some of what the prosecutor said. Despite the heat of trial, prosecutors must fulfill their responsibility to act professionally. The force of argument, not passion, must be what carries the day for the State.

## IV. LETTERS BY VICTIM TO DEFENDANT

{30} Two days before trial the State filed a motion in limine to preclude Defendant from offering into evidence some letters written by Victim to Defendant after the alleged assault. At a hearing on the motion the next day, the State contended that Defendant made an untimely disclosure of the letters, *see* Rule 5–502(A)(1), NMRA 1997, and that to rebut the letters the State would need to obtain expert testimony on battered-woman syndrome to explain how Victim could still write an affectionate letter to Defendant after being assaulted. Defense counsel argued that disclosure had been timely but did not address the merits of the admissibility of the documents. The district court granted the State's motion. The court did not explain its ruling, and defense counsel did not seek an explanation. On this record we cannot say that exclusion of the documents because of untimely disclosure would be an abuse of discretion.

■ {31} Moreover, Defendant has not established that he suffered significant prejudice from the ruling. Despite the ruling, defense counsel cross-examined Victim regarding whether she had written a letter to Defendant proclaiming her love. Thus, Defendant was permitted to achieve one purpose of admitting the letters—to point out that Victim expressed affection toward Defendant after the alleged assault. Defendant contends that the letters would also have corroborated his contention that Victim was the aggressor, because one letter contained the statement: "We can get married when you get out. But I will beat the hell out of you. Ha Ha just kidding." But Defendant made no attempt to question Victim regarding that statement and did not argue to the court that the letter should be admitted into evidence for the purpose of showing that particular statement to the jury. Given that neither the State nor the court made any

effort to restrict Defendant in cross-examining Victim regarding the content of the letters, no reversible error could have resulted from the court's pretrial ruling excluding the letters.

## V. CONDITION OF PROBATION

{32} The district court sentenced Defendant to nine years imprisonment, with three years suspended. As a condition of probation during the suspended period, the court ordered Defendant to "leave the United States and NEVER return except in a lawful manner." Defendant contends that this condition of probation was unlawful. The State concedes error. *See State v. Dominguez*, 115 N.M. 445, 456, 853 P.2d 147, 158 (Ct.App. 1993).

## VI. CONCLUSION

{33} We affirm Defendant's conviction and sentence except that we remand to the district court for deletion of the banishment condition of probation.

{34}   **IT IS SO ORDERED.**

APODACA and WECHSLER, JJ., concur.

