This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 32,787**

**WILLIAM B. ELLIOTT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant appeals from his conviction for breaking and entering on grounds that (1) he was deprived of a fair trial when the district court refused his requested jury instruction on the lesser included offense of criminal damage to property, (2) he was denied his right to a speedy trial, and (3) he was subjected to unfair pre-indictment delay. We affirm in all respects.

**BACKGROUND**

**{2}** It is undisputed that at around 2:30 a.m. on February 17, 2010, Defendant and a companion—both intoxicated—knocked at the door of a ground-floor unit at the Casa Bandera Apartments in Las Cruces. The residence was presently occupied by Anthony Torrez and Jasper Walker, who lived there, and Chon Miranda and LeAnn Ulibarri, who were visiting. None knew Defendant or his companion.

**{3}** It is also beyond dispute that, after a short conversation between Defendant and Torrez, Defendant kicked in the door and entered the apartment. Ulibarri began to scream as Torrez, Walker, and Miranda—all bull riders— approached Defendant and "hit him like a tidal wave[,]" causing a vicious brawl to spill out into the breezeway of the apartment complex. The melee lasted for several minutes and was broken up when a neighbor called the police. Defendant was subsequently charged with and convicted of breaking and entering.

{4}     The only apparent points of factual dispute are (1) *why* Defendant broke down the door and, (2) whether Defendant stumbled or stepped into the apartment. Defendant testified that someone inside, presumably Torrez, slammed the door on his elbow, trapping him. Defendant then pushed and kicked against the door to free his arm, which came loose as the door swung open. Defendant claimed that it was his momentum that carried him into the apartment and led to the fight.

{5}     Torrez, Walker, Ulibarri, and Miranda all testified to the effect that Defendant, enraged, pressed up against the door to prevent Torrez from closing it. Torrez used "all [his] might" to close the door and then engaged the deadbolt. Seconds later, the "whole door was hit down"—its frame broken off completely. Defendant stepped into the apartment, and the fight ensued. According to all of the apartment's occupants and a detective who investigated the scene, Defendant's arm was not trapped in the door when it was kicked down. We include further factual information as necessary in connection with each issue raised.

## DISCUSSION

### Defendant's Requested Jury Instruction

{6}     Defendant asserts that he was entitled to a lesser included offense instruction on criminal damage to property pursuant to Rule 5-611(D) NMRA ("If so instructed, the jury may find the defendant guilty of an offense necessarily included in the offense

3

charged."), the common law, and the United States and New Mexico constitutions. We apply a single analysis to Defendant's contentions because Rule 5-611(D) tracks the common law, *see State v. Munoz*, 2004-NMCA-103, ¶ 9, 136 N.M. 235, 96 P.3d 796, and because Defendant has not developed any specific constitutional argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [those] arguments might be."). As Defendant has raised a mixed question of law and fact, we view the evidence in the light most favorable to the granting of the requested instruction and then apply a de novo standard of review. *State v. Ramirez*, 2008-NMCA-165, ¶ 4, 145 N.M. 367, 198 P.3d 866.

**{7}** At trial, the district court summarily refused to grant Defendant's requested instruction because criminal damage to property is "certainly" not a lesser included offense to breaking and entering. Although the district court's reasoning was apparently erroneous, *see State v. Rubio*, 1999-NMCA-018, ¶ 17, 126 N.M. 579, 973 P.2d 256 (assuming that "under appropriate fact patterns, criminal damage to property could be a lesser[]included offense of breaking and entering"), we will uphold its decision if it is right for any reason, *State v. Allen*, 2014-NMCA-111, ¶ 6, 336 P.3d 1007, *cert. denied*, 2014-NMCERT-010, 339 P.3d 425.

**{8}** The purpose of providing a lesser included offense instruction at a defendant's request is

4

> to protect the defendant from the possibility that jurors who are not convinced of his guilt of the charged offense would nonetheless convict him of the offense because they are convinced that he committed a crime (the lesser[]included offense) and believe that he should be punished but are presented with an all-or-nothing choice between convicting of the charged offense or acquittal.

*State v. Andrade*, 1998-NMCA-031, ¶ 11, 124 N.M. 690, 954 P.2d 755. Thus, the instruction should be granted if

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense . . . ; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*State v. Meadors*, 1995-NMSC-073, ¶ 12, 121 N.M. 38, 908 P.2d 731. The State appears to concede that the first two elements of the *Meadors* test are met, leaving only the third element—whether "a jury rationally could acquit on the greater offense and convict on the lesser"—in dispute. *Id.*

{9} The jury was instructed, in relevant part, that breaking and entering is a general intent crime that requires: (1) that Defendant entered the dwelling without permission; and (2) that the entry was obtained by the breaking of the front door. This language accurately tracks the statute and its uniform jury instruction. *See* NMSA 1978, § 30-14-8 (1981); UJI 14-1410 NMRA. The elements of criminal damage to property are: (1) intentional damage to the property of another; (2) without permission. *See* NMSA

5

1978, § 30-15-1 (1963); UJI 14-1501 NMRA. Thus, "[a]n unauthorized entry is the distinguishing element of the two crimes." *Rubio*, 1999-NMCA-018, ¶ 17. For these reasons, we frame the question as whether, viewing the evidence in the light most favorable to Defendant, a jury could rationally find that Defendant did not commit an unauthorized entry.

{10} Even accepting Defendant's version of events, which requires ignoring the testimony of five witnesses, as well as a photograph of the damaged door frame and strike plate that was exhibited for the jury, Defendant's conduct meets the element that distinguishes breaking and entering from criminal damage to property. In other words, Defendant still committed an unauthorized entry. His motive is irrelevant. The physical "entering" and "breaking" elements that Defendant's version of the facts implicates are "bodily movements, to which the general intent instruction clearly applies." *State v. Contreras*, 2007-NMCA-119, ¶ 17, 142 N.M. 518, 167 P.3d 966. In this context, "[g]eneral intent is only the intention to make the bodily movement which constitutes the act which the crime requires." *Id.* ¶ 16 (internal quotation marks and citation omitted). According to Defendant's version of events at trial, the bodily movement that caused Defendant to break the door and enter the apartment was the kicking of the door. Since it is undisputed that Defendant purposely kicked the door and gained entry by doing so, there is no reasonable view of the evidence that criminal

damage to property was the highest degree of crime committed and, therefore, there was no error in refusing the instruction. *Rubio*, 1999-NMCA-018, ¶ 17.[1]

**Speedy Trial**

{11}     Defendant was arrested on the day of the incident, February 17, 2010, and then indicted on February 25, 2010. Defendant requested two continuances in 2010 and was eventually re-indicted in November of that year. New trial dates were set and vacated on three occasions after the second indictment. Trial was finally held on February 2, 2012, nearly two years after the day of the incident.

{12}     Delays that exceed one year for simple cases trigger the speedy trial analysis. *State v. Garza*, 2009-NMSC-038, ¶¶ 21, 48-49, 146 N.M. 499, 212 P.3d 387. The State does not dispute that this is a simple case and that the analysis is triggered here. In evaluating a speedy trial claim, the Court must consider: "(1) the length of the delay, (2) the reasons given for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant." *State v. Lopez*, 2009-NMCA-127, ¶ 20, 147 N.M. 364, 223 P.3d 361. "[W]e independently evaluate the four factors to ensure that no speedy trial violation has occurred while giving deference to the trial

---

[1]While Defendant's testimony about his reasons for kicking the door may have supported an instruction on an affirmative defense, *see, e.g.*, UJI 14-5181 NMRA (self-defense), we are not presented with that issue here.

7

court's findings." *State v. Talamante*, 2003-NMCA-135, ¶ 3, 134 N.M. 539, 80 P.3d 476 (alteration, internal quotation marks, and citation omitted).

**1.        Length of Delay**

{13}      "[T]he right to a speedy trial attaches when the defendant becomes the 'accused' which occurs with a formal indictment or information or arrest." *Id.* ¶ 4. Defendant asserts on appeal that we should measure the length of delay beginning with Defendant's arrest on February 17, 2010. The State counters that the delay should be measured from the date of the second indictment, November 23, 2010.

{14}      We have previously identified two circumstances when a case is dismissed and then re-indicted where we will look to the initial arrest, information, or indictment as the starting point for speedy trial purposes: (1) where the State and the district court essentially treat the two cases as a single case, *see id.* ¶ 9, or (2) where the State acts in bad faith in dismissing and refiling charges against the defendant. *See State v. Fierro*, 2014-NMCA-004, ¶ 13, 315 P.3d 319.

{15}      As in *Talamante*, the State and the district court here essentially treated the separate indictments against Defendant as a single case. The grand jury indicted Defendant for the second time on the same day that identical charges were dismissed. The same prosecutor and same defense attorney litigated the second case. In its request for jury setting, the State characterized both cases against Defendant as one "really old" case. Here, as in *Talamante*, "the charges against Defendant were never

8

dismissed or discharged in any real sense, thus his speedy trial rights continued to apply." 2003-NMCA-135, ¶ 8. "The fact that the first indictment was dismissed is of no consequence because the second indictment was returned on the same day charging the identical offenses set forth in the first indictment." *Id.* Therefore, Defendant's right to a speedy trial attached on February 17, 2010.

**{16}** Defendant was not tried until February 2, 2012. "In determining the weight to be given to the length of delay, we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885 (internal quotation marks and citation omitted). Here, the overall delay of nearly two years in a simple case, which should have been completed in half that time, weighs against the State. *See Garza*, 2009-NMSC-038, ¶ 48.

**2.     Reasons for Delay**

**{17}** "Closely related to length of delay is the reason the government assigns to justify the delay." *Id.* ¶ 25 (internal quotation marks and citation omitted). These reasons "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). There are three types of delay, each carrying a different weight. *Id.* Prosecutorial bad faith will be weighed heavily against the State; negligent or administrative delays will weigh

less heavily; and appropriate delays for valid reasons, such as a missing witness, are justified. *Id.* ¶¶ 25-27.

**{18}** The record on appeal indicates that Defendant contributed to delay early in the case. Defendant requested to continue and vacate the first two trial settings, which would have occurred within a year. Defendant also requested to be re-indicted nine months after the initial indictment and shortly before trial so that he could testify to the grand jury. When the State, in good faith, supported Defendant's request, dismissing all charges and re-indicting him, Defendant elected not to testify after all. "[D]elay occasioned by the accused will weigh heavily against him." *State v. Harvey*, 1973-NMCA-080, ¶ 7, 85 N.M. 214, 510 P.2d 1085. We find that a total of nine months—from February 17, 2010, until November 23, 2010—were occasioned by Defendant and cannot be attributed to the State.

**{19}** After the second indictment, trial was set for May 18, 2011. The State requested and was granted a continuance the day prior to trial because the prosecutor was scheduled to attend a conflicting jury trial. The district court then twice delayed the trial because "the court had other priority trials[.]" As there is no indication that the State, at any point, "held back in its prosecution . . . to gain some impermissible advantage[,]" we attribute the period of delay from November 23, 2010, until February 2, 2012, to negligent or administrative delay, which is "weighed more lightly than a deliberate intent to harm the accused's defense[.]" *Garza*, 2009-NMSC-

10

038, ¶¶ 25-26 (internal quotation marks and citations omitted). Thus, of the two years it took to bring this case to trial, fourteen months are attributable to negligent or administrative delay.

**3.      Assertion of the Right**

{20}      "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo*, 407 U.S. 514, 531-32 (1972). We thus "accord weight to the frequency and force of the defendant's objections to the delay[,]" and "analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted).

{21}      The record shows that Defendant asserted his right to a speedy trial immediately upon the filing of the second indictment in November 2010 and again on the morning of trial. As discussed above, the case was re-filed to accommodate Defendant's request to testify to the grand jury. Defendant then declined to testify. We therefore afford little weight to the November 2010 assertion, which re-initiated the proceedings. *See id.* (stating that the force of the defendant's assertion is mitigated when the defendant is engaging in procedural maneuvers or filing motions that are bound to slow the proceedings).

{22} Nothing in the record indicates that Defendant asserted his speedy trial right during the period of delay occasioned by the State's negligence. This leaves only Defendant's assertion on the morning of trial. An assertion at this late stage of proceedings may be timely, but it "is not entitled to much weight." *State v. White*, 1994-NMCA-084, ¶ 6, 118 N.M. 225, 880 P.2d 322.

**4.      Prejudice to Defendant**

{23} We analyze prejudice to the accused in light of three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. On appeal, Defendant only vaguely refers to "anxiety and concern" over his awareness of pending charges. Citing *Salandre v. State*, 1991-NMSC-016, 111 N.M. 422, 806 P.2d 562, he asserts that "the State must show there has been no anxiety and concern." Defendant has conflated the significance of "presumptive prejudice" and "actual prejudice." The former is simply the term that has been assigned to the threshold, mechanical inquiry that triggers the speedy trial analysis. *Garza*, 2009-NMSC-038, ¶ 21. Establishing "presumptive prejudice"—that is, establishing that the State took longer than a year to bring a simple case to trial—does not shift the burden to the State to prove the absence of actual prejudice. *See id.* ¶ 35 (stating that the defendant bears the burden of proof on this issue). "[W]ithout a particularized showing of prejudice, we will not speculate as to the . . . degree of anxiety a defendant

12

suffers." *Id.* The burden-shifting principles that Defendant cites to the contrary were expressly modified in *Garza. Id.* ¶¶ 19-22.

**5.      Balancing Test**

{24}      Since Defendant has not made a particularized showing of actual prejudice, his claim must fail unless the other factors "weigh heavily" against the government. *See id.* ¶¶ 38-40. They do not. The weight of the fourteen month delay that is attributable to the State's negligence is mitigated by Defendant's apparent acquiescence to that delay. Defendant did not assert his right during the entire period and took no position on the State's last-minute motion to continue the May 18, 2011 trial setting. While proceedings in this case were unfortunately and unnecessarily slow, in the face of Defendant's acquiescence and in the absence of any showing of actual prejudice, we cannot say that Defendant's constitutional right to speedy trial was violated.

**Unfair Pre-indictment Delay**

{25}      Defendant's final and related argument is that he is entitled to reversal because he was subjected to unfair pre-indictment delay. Our Supreme Court has adopted a two-part test for this issue. *Gonzales v. State*, 1991-NMSC-015, ¶ 6, 111 N.M. 363, 805 P.2d 630. First, a defendant must prove prejudice to his defense as a result of the delay and, second, he must prove that the State intentionally caused the delay to gain a tactical advantage. *Id.* Defendant's brief on appeal makes no attempt to establish or even acknowledge either step of the analysis. We accordingly reject this claim. *See*

*id.* ¶¶ 8, 10-11 (discussing a defendant's burden to make a prima facie showing as to both elements).

**CONCLUSION**

{26}    We affirm the district court in all respects.

{27}    **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**M. MONICA ZAMORA, Judge**