This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36847**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ANDREW NICHOLAS MAY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Laurie K. Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**    Defendant Andrew May appeals from his convictions, following a jury trial, of aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003); and driving while license suspended, contrary to NMSA 1978, Section 66-5-39 (2013, amended 2019). For the reasons that follow, we reverse Defendant's conviction for driving on a suspended license and otherwise affirm.

## BACKGROUND

**{2}** On January 9, 2017, Defendant attempted to leave Lowe's Signature Market with merchandise concealed in his jacket; however, after a confrontation with the Lowe's Store Manager, Steve Lenzo, the merchandise was recovered. Sometime before that confrontation, the police had been called because Defendant was known by Lowe's as a person of interest.[1]

**{3}** As Defendant left the store, Alamogordo Police Department Detective Carl Becker arrived at Lowe's. After Mr. Lenzo pointed at Defendant, Detective Becker activated the emergency lights on his unmarked truck and drove across the parking lot to where Defendant was headed. Detective Becker, who was in plain clothes and displaying his badge of office, got out of his truck to try to make contact with Defendant. Detective Becker yelled multiple times to Defendant, instructing him to turn off his car. As Defendant drove away, Detective Becker, with his lights and sirens engaged, followed Defendant at some distance. Detective Becker stopped following him when officers responding in marked vehicles were in a position to begin pursuing Defendant.

**{4}** Officer Garrett was one of the officers who responded in a marked Alamogordo Police Department vehicle. Officer Garrett, who was in a patrol uniform displaying his badge of office on that day, stated that his lights and sirens were activated when he began to pursue Defendant. Officer Garrett testified that, at one point, Defendant was traveling seventy miles per hour. Officer Garrett testified that he remained two or three car lengths away from Defendant on straightaways and was able to get closer on turns because Defendant's car fishtailed as it turned. Officer Garrett testified that they traveled approximately two miles after he began following Defendant. Officer Garrett identified four stop signs at which Defendant failed to stop. Officer Garrett further testified that other vehicles had to stop as Defendant ran one of the stop signs. Officer Garrett also testified that bicyclists were traveling in the same lane as Defendant on one of the roads.

**{5}** Officer Garrett testified that Defendant eventually crashed his vehicle into a washout, causing parts from the vehicle to "go everywhere[,]" and then ran from his crashed vehicle for about thirty to forty yards before giving up. Defendant was not able to provide Officer Garrett with an identification card or driver's license. Instead, Defendant told Officer Garrett that there was a passport in his vehicle. Officer Garrett testified that he determined that Defendant's license was suspended. Officer Garrett also testified that he had seen documentation showing that Defendant was mailed notification of his suspended license.

---

1Defendant moved in limine to prevent the State from discussing Defendant's alleged prior shoplifting at Lowe's. The State responded that it needed to be able to explain why Lowe's had called the police before the confrontation so the jury did not presume an improper reason, such as a racial motive. The district court suggested that Defendant be identified as a "person of interest," and Defendant agreed that was the least prejudicial description. Defendant does not challenge the use of "person of interest" in this appeal.

**{6}**    In his defense, Defendant testified that he: (1) did not notice Detective Becker or hear his siren; (2) did not know he was being pursued until approximately two or three blocks before he crashed; (3) did not speed or run stop signs; (4) did not see any bicyclists or any vehicles that he came close to; (5) gave up less than ten feet in front of his vehicle; (6) had a temporary license that had recently expired; and (7) had a warrant that the police would find out about.

**{7}**    The jury found Defendant guilty of aggravated fleeing and driving on a suspended license. Defendant appeals.

## DISCUSSION

**{8}**    Defendant argues that: (1) we should certify to our Supreme Court the issue of whether it wrongly concluded in *State v. Padilla*, 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299 that compliance with the Law Enforcement Safe Pursuit Act, NMSA 1978, §§ 29-20-1 to -4 (2003), is not an element of the offense of aggravated fleeing; (2) there was insufficient evidence to support his convictions for aggravated fleeing and driving on a suspended license; (3) it was error for the district court to deny Defendant's request for a lesser included offense instruction; (4) the district court erred by admitting evidence of Defendant's outstanding warrant; and (5) it was error for the district court to deny Defendant's request for a continuance. We address each argument in turn.

**I.    We Decline Defendant's Invitation to Certify the Issue of Whether *Padilla* Incorrectly Concluded That Compliance With the Law Enforcement Safe Pursuit Act Is Not An Element of Aggravated Fleeing**

**{9}**    Defendant argues that *Padilla* "was wrongly decided when it read out of [Section 30-22-1.1] the requirement that the chase was conducted 'in accordance with the provisions of the Law Enforcement Safe Pursuit Act.' " Defendant, citing *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 20, 135 N.M. 375, 89 P.3d 47, acknowledges that we are bound by our Supreme Court's precedent. Accordingly, Defendant argues that we should certify to our Supreme Court the issue of whether *Padilla* was wrongly decided, contending that certification is proper because this is an issue of substantial public interest. *See* NMSA 1978, § 34-5-14(C)(2) (1972) ("The [S]upreme [C]ourt has appellate jurisdiction in matters appealed to the [C]ourt of [A]ppeals, but undecided by that court, if the [C]ourt of [A]ppeals certifies to the [S]upreme [C]ourt that the matter involves . . . an issue of substantial public interest that should be determined by the [S]upreme [C]ourt.")

**{10}**    "[W]e ordinarily do not certify an issue to our [S]upreme [C]ourt for reconsideration of an earlier case unless subsequent legislation, decisions of the New Mexico Supreme Court, or decisions of the United States Supreme Court place in question the underpinnings of the decision being challenged." *State v. Bencomo*, 1990-NMCA-028, ¶ 9, 109 N.M. 724, 790 P.2d 521. Because nothing in Defendant's argument suggests that any of those situations are present here, we decline Defendant's invitation to certify this issue to our Supreme Court.

## II.     Defendant's Sufficiency of the Evidence Challenges

## A.     Standard of Review

**{11}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, appellate courts "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (internal quotation marks and citation omitted). We also disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before [us] is not whether [we] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alteration, internal quotation marks, and citation omitted). Lastly, we note that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alteration, internal quotation marks, and citation omitted).

## B.     Substantial Evidence Supports Defendant's Conviction for Aggravated Fleeing

**{12}**     As to his conviction for aggravated fleeing, Defendant argues that the State failed to present sufficient evidence to support that he "drove willfully and carelessly in a manner that endangered the life of another person[.]" Specifically, Defendant's argument focuses on his claim that there was no evidence that he actually endangered anyone because he had no passengers in his car and because the State presented no evidence that he came close to endangering any particular individual.

**{13}**     To support his argument, Defendant argues that because he did not have any passengers in his vehicle, his case is distinguishable from cases in which endangerment of the life of another was based, at least in part, on the presence of passengers in the defendants' vehicles. *See Padilla*, 2008-NMSC-006, ¶ 17 (concluding that "there was at least one other motorist, apart from the officer" and the passengers in the defendant's car who were placed at risk); *State v. Coleman*, 2011-NMCA-087, ¶ 22, 150 N.M. 622, 264 P.3d 523 (concluding that the lives of the passengers and the deputy sheriff "were placed in jeopardy during the chase"). However, this Court has recognized that it "is not entirely useful" to draw inferences from cases where "passengers were present in the vehicles while the drivers were fleeing from law enforcement" when the case at bar does not involve passengers. *State v. Vest*, 2018-NMCA-060, ¶ 12, 428 P.3d 287, *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-37210, Sept. 24, 2018).

**{14}** In *Vest*, this Court determined "that the aggravated fleeing statute requires that the [s]tate prove actual endangerment to another person[.]" *Id.* ¶ 10. *Vest* defined endangerment to be "the exposure to the peril or harm [that] is an actual or current condition facing the impacted person." *Id.* ¶ 9. While concluding that "potential or future harm" is insufficient, *Vest* cautioned against construing the endangerment requirement to require proof that a fleeing suspect drove "within inches of another vehicle" or that other drivers avoided a collision by "extraordinary evasive maneuvering." *Id.* ¶¶ 9, 15.

**{15}** Applying the analysis established in *Vest*, we conclude that there was sufficient evidence for a jury to find that Defendant's actions actually endangered others. Officer Garrett testified that, during his pursuit, Defendant reached speeds of up to seventy miles per hour, ran four stop signs, and fishtailed through various intersections as he turned. Officer Garrett described one intersection where Defendant ran a stop sign and said that he "was glad that [the other vehicles at those intersections] did stop." Officer Garrett testified further that, at one point, bicyclists were traveling in the same lane as Defendant as he fled. From this evidence, the jury could have reasonably concluded that Defendant drove willfully and carelessly in a manner that endangered the lives of others. Accordingly, viewing the evidence in the light most favorable to the jury's guilty verdict, we conclude that substantial evidence supports Defendant's conviction for aggravated fleeing.

## C. Substantial Evidence Does Not Support Defendant's Conviction for Driving on a Suspended License

**{16}** To convict Defendant for driving on a suspended license, the State was required to prove that:

1. [D]efendant operated a motor vehicle upon a public highway;

2. That, at the time, [D]efendant's driver[']s license had been suspended;

3. [D]efendant knew or should have known that his license was suspended;

4. This happened in New Mexico on or about the 9th day of January, 2017.

Defendant argues that the State failed to present sufficient evidence of the second and third elements.[2] Because we conclude that the evidence of the third element is

---

2Within these arguments, Defendant contends that the State's misidentifying him as "Mr. Lenzo" while questioning Officer Garrett meant that the jury would have had to impermissibly speculate that Officer Garrett was testifying about Defendant. Defendant also contends that the information Officer Garrett testified about was hearsay. However, we do not address either of Defendant's contentions because we reverse this conviction based on insufficient evidence.

insufficient, we need not analyze whether the second element is supported by sufficient evidence.

**{17}** The State relied on two pieces of evidence to establish the third element, knowledge: first, Officer Garrett testified that he had seen the letter sent to Defendant notifying him that his license was suspended; and second, Defendant had obtained an identification card instead of a driver's license, which the State argued supported an inference that Defendant knew he could not get a driver's license.[3] On appeal, the State argues that this element also could be satisfied through evidence suggesting consciousness of guilt by his flight, by Defendant's testimony that his temporary license had expired a couple of months before his arrest in this case, and by Defendant's use of his passport for identification. None of the evidence relied on by the State, either at trial or on appeal, when viewed individually or in the aggregate, supports a reasonable inference that Defendant knew or should have known his license was suspended.

**{18}** Officer Garrett's testimony served only to establish that an effort to notify Defendant of the suspension of his license had been effectuated by mail. His testimony did not identify where the notice was mailed, whether it was on a stamped or certified envelope, whether the address used was an appropriate address for Defendant, or whether the notice was ever returned as undeliverable or suffered some other defect that defeated the purpose of notification. Standing alone, Officer Garrett's second-hand knowledge of the occurrence of a mailed notification was insufficient to support an inference that Defendant knew or should have known of his suspended license. *Cf. State v. Herrera*, 1991-NMCA-005, ¶ 21, 111 N.M. 560, 807 P.2d 744 (concluding that an inference that the defendant knew or should have known his license was suspended was supported, in part, by evidence indicating that two unreturned certified copies of the notice of revocation were sent to an address matching the address on a traffic citation issued personally to the defendant and that the defendant did not challenge the accuracy of that address). Moreover, we are unaware of any authority, and the State cites none, that suggests a defendant's knowledge of an expired license or use of a passport for identification creates a reasonable inference that he knew or should have known that his license was suspended. We therefore assume no such authority exists, *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129, and conclude that such inferences are not reasonable under these facts and circumstances. Although we agree that flight can support an inference of consciousness of guilt, *see State v. Trujillo*, 1979-NMCA-055, ¶ 4, 93 N.M. 728, 605 P.2d 236 (" 'Consciousness of guilt' is an inference that may be drawn from the 'flight' evidence."), such an inference is not proper here because there is no other evidence suggesting that Defendant knew or should have known his license was suspended. Accordingly, it would require speculation for the jury to conclude that Defendant was fleeing because of his suspended license. For these reasons, we conclude that there was insufficient evidence to support Defendant's conviction for driving on a suspended license and reverse that conviction.

---

[3]In our review of the record from trial, we did not find any evidence suggesting Defendant had obtained an identification card.

**III.    The Evidence Presented at Trial Did Not Support Defendant's Request for an Instruction on Reckless Driving**

**{19}**    Defendant contends that the district court should have instructed the jury on reckless driving as a lesser included offense of the charge of aggravated fleeing. "We review the propriety of a district court's refusal to instruct on a lesser included offense under a de novo standard." *State v. Munoz*, 2004-NMCA-103, ¶ 10, 136 N.M. 235, 96 P.3d 796. On review, we view the evidence "in the light most favorable to the giving of the requested instruction." *State v. Henley*, 2010-NMSC-039, ¶ 25, 148 N.M. 359, 237 P.3d 103 (internal quotation marks and citation omitted).

**{20}**    As this Court has explained, the purpose behind a defendant's request for a lesser included offense instruction

> is to protect the defendant from the possibility that jurors who are not convinced of his guilt of the charged offense would nonetheless convict him of the offense because they are convinced that he committed a crime (the lesser included offense) and believe that he should be punished but are presented with an all-or-nothing choice between convicting of the charged offense or acquittal.

*State v. Andrade*, 1998-NMCA-031, ¶ 11, 124 N.M. 690, 954 P.2d 755. Accordingly, when a court fails to give an appropriate lesser included offense instruction, "[t]here is a legitimate concern that conviction of the greater offense may result because acquittal is an alternative that is unacceptable to the jury." *Id.* (internal quotation marks and citation omitted).

**{21}**    In *State v. Meadors*, our Supreme Court endorsed the cognate approach to determine whether a lesser included offense instruction should be given. 1995-NMSC-073, ¶ 12, 121 N.M. 38, 908 P.2d 731. Under the cognate approach, a court should grant a request for the instruction if

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.*[4] The cognate approach is applicable whether the state or the defendant requests the instruction on the lesser included offense. *See State v. Juan*, 2010-NMSC-041, ¶ 23,

4The State cites a substantially similar test for determining whether a defendant's request for a lesser included offense instruction should be granted. *See State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537 ("Failure to instruct the jury on a lesser included offense of a charged offense is reversible error if: (1) the lesser

148 N.M. 747, 242 P.3d 314 (applying the cognate approach to a defendant's request for a lesser included offense instruction). However, the first prong is of lesser consequence when the instruction is requested by the defendant. *See id.*

**{22}** We need only analyze the third element to conclude that Defendant is not entitled to a lesser included offense instruction on reckless driving because the elements distinguishing reckless driving from aggravated fleeing are not sufficiently in dispute under the facts of this case. We explain.

**{23}** In regard to the aggravated fleeing charge, the State was required to prove beyond a reasonable doubt that Defendant: (1) "operated a motor vehicle;" (2) "drove willfully and carelessly in a manner that endangered the life of another person;" (3) "had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle;" (4) "knew that a law enforcement officer had given him an audible or visual signal to stop;" and (5) that happened "in New Mexico on or about the 9th day of January, 2017." *See* UJI 14-2217 NMRA. Had the jury been instructed on reckless driving, the State would have had to prove beyond a reasonable doubt that Defendant: (1) "operated a motor vehicle;" (2) "drove carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property;" (3) that happened "in New Mexico, on or about the 9th day of January, 2017." *See* UJI 14-4504 NMRA.

**{24}** Based on his initial testimony that he did not know that he was being pursued, Defendant argues that the scienter requirement of aggravated fleeing was sufficiently in dispute so that a jury could rationally acquit him on the aggravated fleeing charge but still convict on reckless driving.[5] *See Padilla*, 2008-NMSC-006, ¶ 15 ("The scienter requirement of aggravated fleeing is satisfied when the defendant flees a law enforcement officer with both: (a) the knowledge that the individual is a law enforcement officer, as designated by his uniform and marked vehicle, and (b) the knowledge that the law enforcement officer has signaled him to stop, either by use of a visual or audible signal."). Accordingly, Defendant contends that he was entitled to have the jury instructed on the lesser included offense of reckless driving. *See Meadors*, 1995-NMSC-073, ¶ 12 (stating that "the elements that distinguish the lesser and greater offenses [must be] sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser"). However, Defendant's argument fails to acknowledge the entirety of his testimony.

offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue."). Our holding is the same under either test because the evidence did not present the possibility that the lesser offense was the highest degree of the crime committed.

5At trial, Defendant twice argued for the lesser included offense instruction. Both times, Defendant suggested only that there was a dispute as to whether Defendant knew he was being pursued. Therefore, to the extent that Defendant is also arguing on appeal that the reckless driving jury instruction should have been given because the endangerment element of aggravated fleeing was also in dispute, such an argument is not preserved and we decline to address it. *See Lucero*, 1999-NMCA-102, ¶ 43.

**{25}** Defendant initially testified that he did not believe the police vehicles were for him despite seeing police vehicles with their sirens engaged. Defendant then testified that he realized that there were two or three police vehicles behind him after he made another turn but testified that he did not want to show up at his parents' house with the police vehicles. Defendant further testified that he continued another two or three blocks after he knew he was being pursued by the police vehicles. Based on our review of Defendant's entire testimony, we cannot conclude that the scienter requirement as identified in *Padilla* was sufficiently in dispute in this case. Accordingly, we conclude that Defendant was not entitled to a lesser included offense instruction on reckless driving under the facts of this case.

## IV. Any Error Stemming from the Admission of Evidence of the Warrant For Defendant's Arrest Was Harmless

**{26}** The State moved in limine to be able to reference that the arresting officer had identified that Defendant had "warrants" out for his arrest, arguing that such evidence was relevant to Defendant's motive to flee. The State suggested that it would not mention the underlying conduct or that there were three outstanding warrants. In response, Defendant briefly and generally objected to "the mention of any extraneous alleged offenses including the existence of warrants." The district court asked why they could not say "warrant" instead of "warrants," to which the State replied that it would be willing to compromise and only use "warrant." Defendant briefly renewed his general objection. The district court acknowledged that disclosing even one warrant would be prejudicial, but concluded that such prejudice was outweighed by the probative value to the State's case.

**{27}** Defendant argues that "[e]ven if this Court holds that the [district] court properly accepted the State's 'motive' rationale, it should reverse the [district] court because the probative value of the evidence was outweighed by its unfairly prejudicial force." Defendant further argues that the evidence was also needlessly cumulative. Defendant's argument cites both Rule 11-403 NMRA and Rule 11-404(B) NMRA. However, Defendant does not offer any argument as to why the evidence could not be properly admitted under Rule 11-404(B) pursuant to the "motive" rationale. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments). Accordingly, we limit our analysis to whether the prejudice of admitting the evidence outweighed its probative value and whether the evidence was needlessly cumulative under Rule 11-403. Assuming without deciding that the admission of Defendant's warrant under Rule 11-403 was an abuse of discretion, we conclude that any error was harmless for the reasons that follow.

**{28}** "A non-constitutional error requires reversal when there is a reasonable probability that misconduct contributed to the defendant's conviction." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 (alteration, internal quotation marks, and citation omitted). "To judge the 'probable' effect of an evidentiary error, courts must evaluate all circumstances surrounding the error." *Id.* "We examine the error itself, including the

source of the error and the emphasis placed on the error at trial." *Id.* "To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial." *Id.* Such an analysis is done case-by-case. *Id.*

**{29}**    Our review indicates that the existence of the warrant was not unduly emphasized at trial. Defendant's warrant was only mentioned three times during the presentation of evidence. The first was by Officer Garrett when discussing information he was given by dispatch. The second and third references were by Defendant during cross-examination, when Defendant testified that he knew there was a warrant out for his arrest based on a probation violation and that law enforcement would find out about his warrant if he was stopped. Defendant's responses followed his direct examination testimony that he did not want to stop once he realized he was being pursued because he was embarrassed and was thinking about what he was going to say.

**{30}**    The existence of evidence of Defendant's guilt, separate and apart from the warrant evidence Defendant challenges, supports our conclusion that any error was harmless. That evidence includes Officer Garrett's testimony, which described his pursuit of Defendant, Defendant's careless and heedless driving during the pursuit, Defendant's crash, and Defendant's flight from his vehicle; and Defendant's admission that even when he knew he was being pursued he continued to drive. It was this evidence and not the warrant that the State emphasized during its closing arguments. Under these facts and circumstances, we conclude that any error in the admission of the evidence of Defendant's warrant was harmless.

### V.    Defendant Has Not Met His Burden to Demonstrate That If the District Court Abused Its Discretion by Denying His Request for a Continuance, He Suffered Prejudice as a Result

**{31}**    Lastly, Defendant argues that he was prejudiced by the district court's denial of his motion for a continuance because he was not able to file a motion challenging the officer's compliance with the Law Enforcement Safe Pursuit Act.[6] However, as he acknowledged in the district court, Defendant was able to argue this issue either through a pretrial motion or a motion for a directed verdict. Defendant indeed made his argument that the pursuit in this case did not comply with the Law Enforcement Safe Pursuit Act during his motion for directed verdict at the close of the State's case in chief. Defendant does not explain why making the argument after the close of the State's evidence put him in a worse position than he would have been in had he been able to make the argument before trial, and we will not develop such an argument for him. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. . . . This creates a strain on judicial

_____

6In his reply brief, Defendant suggests that he was also prejudiced by his attorney not having sufficient time to interview "the other officers, including Officer Garrett." However, when requesting the continuance, Defendant's attorney acknowledged that he had interviewed both Detective Becker and Officer Garrett—the only officers to testify in this matter. Therefore, we conclude that Defendant was not prejudiced in this regard.

resources and a substantial risk of error."). Accordingly, we conclude that Defendant has not met his burden to establish that if the district court abused its discretion, Defendant suffered prejudice as a result. *See State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 (stating that a defendant challenging the grant or denial of a continuance must establish both an abuse of discretion and an injury resulting from the abuse).

**CONCLUSION**

**{32}** We reverse Defendant's conviction for driving on a suspended license. We otherwise affirm.

**{33}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**