STATE V. MYERS

This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**JASON MYERS,**
**Defendant-Appellant.**

No. A-1-CA-34538

COURT OF APPEALS OF NEW MEXICO

February 21, 2019

APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY, Jane Shuler Gray, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Kimberly M. Chavez Cook, Assistant Appellate Defender, Santa Fe, NM, for Appellant

**JUDGES**

EMIL J. KIEHNE, Judge Pro Tempore. WE CONCUR: J. MILES HANISEE, Judge, DANIEL J. GALLEGOS, Judge Pro Tempore

**AUTHOR:** EMIL J. KIEHNE

**MEMORANDUM OPINION**

**KIEHNE, Judge Pro Tempore.**

**{1}** Defendant Jason Myers was convicted of driving while impaired (DWI), contrary to NMSA 1978, Section 66-8-102(B) (2010, amended 2016), and of aggravated fleeing

a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003), both offenses arising from a methamphetamine-fueled, high-speed car chase. Defendant does not challenge his DWI conviction, but he does ask us to overturn his conviction for aggravated fleeing on several grounds. First, he contends that the district court erred by wrongfully denying his requested jury instruction under Uniform Jury Instruction (UJI) 14-5111 NMRA regarding the defense of voluntary intoxication. Second, he argues that the district court committed fundamental error when it failed to give a mistake-of-fact instruction given its denial of the voluntary intoxication instruction. Third, Defendant contends that the district court erred by denying his request to instruct the jury on the lesser-included offense of resisting, evading, or obstructing an officer. Alternatively, Defendant asserts that his counsel was ineffective for failing to more vigorously pursue the lesser-included jury instruction for resisting, evading, or obstructing an officer. Fourth and finally, Defendant asserts that the district court violated his constitutional right to present a defense when it disallowed the testimony of certain defense witnesses because their identities were not disclosed until a week before trial, in violation of Rule 5-502(A)(3) NMRA. Because we conclude that none of these claims has merit, we affirm.

**BACKGROUND**

**{2}** On the morning of February 27, 2013, just before 7:00 a.m., deputies responded to reports of a reckless driver traveling west on Highway 180 between Hobbs and Carlsbad, New Mexico. When Deputy Kiley Orgain encountered Defendant's vehicle (SUV), it was traveling 96 miles per hour in a 70 mile-per-hour zone. Deputy Orgain, who was driving a marked patrol vehicle, turned on his emergency lights, and eventually his siren, in an attempt to pull Defendant's SUV over. Defendant refused to stop, however, and continued to drive erratically toward Carlsbad. On several occasions, Deputy Orgain thought that Defendant's SUV was going to crash. As Defendant approached Carlsbad, other police units responded and joined in the effort to stop him. An assisting deputy deployed spike strips in an attempt to stop the SUV, but Defendant managed to avoid the spike strips by veering off the roadway, nearly colliding with other vehicles, and then hitting another vehicle while driving on the wrong side of the roadway. During this pursuit, one deputy observed Defendant frantically yelling into a cell phone. Eventually, Defendant lost control of the SUV, causing it to flip over. After the crash, Defendant was visibly agitated and attempted to extract himself from the wreckage, but was arrested when officers reached the crash scene. Defendant was relatively compliant with the officers at the scene and while he was being taken to the hospital. At the hospital, Defendant's blood was drawn, but he was unable to speak coherently or effectively cooperate with hospital staff at the time. The ensuing report on Defendant's blood draw indicated that he had high levels of methamphetamine and related compounds in his system.

**{3}** At trial, and in support of the DWI charge, the State's expert testified that Defendant had a level of "more than thirty times higher than the therapeutic range" of methamphetamine in his blood and that such high dosages could cause a person to be delusional, to experience hallucinations, and to experience other psychological and

physiological distortions. In light of this testimony, Defendant argued that the high level of methamphetamine in his blood was sufficient to support a voluntary intoxication defense to rebut the State's claim he was driving "willfully and carelessly in a manner that endangered the life of another and . . . knew that a law enforcement officer had . . . given [a] visual or audible signal [to stop]." UJI 14-2217 NMRA. Defendant therefore requested a modified version of UJI 14-2217 on aggravated fleeing, which would have required the State to prove that he "was not intoxicated from the use of drugs at the time the offense was committed to the extent of being incapable of forming an intention to drive a vehicle in a manner that endangered the life of another person after being given a visual or audible signal to stop[.]"

{4}     Defendant also asked the district court to give a modified version of UJI 14-5111 on the voluntary intoxication defense, which would have told the jury to determine whether or not Defendant was intoxicated as a result of his drug use, and if so, the effect that it had on his "ability to form the intent to drive a vehicle in a manner that endangered the life of another person after being given a visual or audible signal to stop." This proposed instruction also would have alerted the jury that if it found Defendant not guilty of aggravated fleeing, it was to then consider whether he was guilty of the lesser-included offense of resisting, evading, or obstructing a police officer, contrary to NMSA 1978, § 30-22-1(B) (1981), but that if the jury had a reasonable doubt about whether Defendant "was capable of forming an intention to continue to drive after being given a visual or audible signal to stop[,]" then it was to acquit him of that offense too.

{5}     The district court denied Defendant's request for these instructions, concluding that voluntary intoxication is a defense available only to specific-intent crimes, and thus was inapplicable to aggravated fleeing, which, according to the district court, is a general-intent crime. This ruling also affected Defendant's request for a lesser-included-offense instruction, which the district court stated "would be excluded based on what I just ruled on." The jury convicted Defendant of both DWI and aggravated fleeing. Defendant now appeals his conviction for aggravated fleeing.

## DISCUSSION

### I.     The district court properly rejected Defendant's requested jury instruction on voluntary intoxication

{6}     On appeal, Defendant claims that the district court erred by refusing two of his requested instructions, which would have informed the jury that it was to find him not guilty if his own voluntary intoxication from taking drugs rendered him incapable of forming the intent (willfulness) required to commit the offense of aggravated fleeing. In the alternative, Defendant argues that the district court should have instructed the jury to find him not guilty if his voluntary intoxication rendered him incapable of subjectively knowing that law enforcement had signaled for him to stop. We reject these claims, because voluntary intoxication is not a defense to aggravated fleeing.

## A. Standard of review

{7} "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. Regarding questions of fact, this Court does "not weigh the evidence but rather determine[s] whether there is sufficient evidence to raise a reasonable doubt" about the defense that has been offered. *Id.* But here we are called on to decide whether voluntary intoxication is a defense to the crime of aggravated fleeing, and that question presents a pure issue of law that we review de novo. *See Collins v. St. Vincent Hosp., Inc.*, 2018-NMCA-027, ¶ 21, 415 P.3d 1012 (stating that appellate courts apply de novo review to determine whether jury instruction that the district court refused to give correctly stated the law), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36837, March 26, 2018).

## B. Voluntary intoxication is not a defense to aggravated fleeing

{8} In New Mexico, it is well established that "voluntary intoxication is neither excuse nor justification for a crime which does not require specific intent." *State v. Crespin*, 1974-NMCA-104, ¶ 9, 86 N.M. 689, 526 P.2d 1282; *see also State v. Campos*, 1996-NMSC-043, ¶¶ 31-46, 122 N.M. 148, 921 P.2d 1266 (recognizing "that voluntary intoxication is only a defense to specific-intent crimes"). Specific-intent crimes encompass "those crimes for which the statutory elements include an intent to do some further act or achieve some additional consequence." *Id.* ¶ 37. For example, first-degree murder, as set forth in NMSA 1978, § 30-2-1(A)(1) (1994), is a specific-intent crime because it requires proof not only of a "defendant's intentional actions" causing the victim's death, but also proof that the defendant had a "deliberate intent to cause death[.]" *Id.* ¶ 39. "The remaining crimes that lack this element of further intent comprise the class of general-intent crimes. Thus, a general-intent crime is one for which no additional intent to accomplish a further goal is specified." *Id.* ¶ 37. "A general[-]intent crime . . . requires only a conscious wrongdoing, or the purposeful doing of an act that the law declares to be a crime." *State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (internal quotation marks and citation omitted).

{9} We conclude that aggravated fleeing is not a specific-intent crime and, therefore, the district court properly denied Defendant's requested instructions. The Legislature has defined aggravated fleeing as follows:

> Aggravated fleeing a law enforcement officer consists of a person willfully and carelessly driving his vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop, whether by hand, voice, emergency, light, flashing light, siren or other signal, by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle in pursuit in accordance with the provisions of the Law Enforcement Safe Pursuit Act.

Section 30-22-1.1(A). The statutory language merely required that Defendant "willfully and carelessly driv[e]" his SUV in a dangerous manner after police signaled to him to stop and pull over, *id.*; it did not require the State to prove that he had "an intent to do some further act or achieve some additional consequence" beyond the willful and careless driving. *Campos*, 1996-NMSC-043, ¶ 37.

**{10}** Defendant, however, argues that he was nevertheless entitled to the instructions under *Brown*, a decision in which our Supreme Court recognized a narrow exception to the rule that voluntary intoxication is only a defense to specific-intent crimes. In that case, our Supreme Court held that a defendant may also assert a voluntary intoxication defense to first-degree depraved mind murder. *Brown*, 1996-NMSC-073, ¶ 1. That crime is defined as "the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused . . . by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." Section 30-2-1(A)(3). Our Supreme Court noted that it had previously interpreted "depraved mind regardless of human life" as requiring the state to prove that a defendant had " 'subjective knowledge' that his or her act was extremely dangerous to the lives of others." *Brown*, 1996-NMSC-073, ¶ 16. Our Supreme Court explained that this interpretation was necessary to distinguish first-degree depraved mind murder from the less serious offense of second-degree murder, which contains a mens rea element of knowledge. *Id.* ¶¶ 13-19; *see* § 30-2-1(B) (stating that "a person who kills another human being without lawful justification or excuse commits murder in the second degree if in performing the acts which cause the death he [or she] *knows* that such acts create a strong probability of death or great bodily harm to that individual or another") (emphasis added)). The *Brown* Court then noted that the knowledge element of second-degree murder requires only objective knowledge, not subjective knowledge.1996-NMSC-073, ¶ 16.

**{11}** Turning to the question of whether voluntary intoxication should be a defense to first-degree depraved mind murder, our Supreme Court stated that the offense of depraved-mind murder presented a "unique circumstance," because the subjective knowledge element meant that the offense could not really be classified as either a general-intent or a specific-intent crime. *Id.* ¶¶ 24-27. Our Supreme Court then explained that a defendant's "capacity to possess 'subjective knowledge' may be just as affected by intoxication as the capacity to intend to do a further act[,]" and held that the district court erred by refusing the defendant's proffered jury instruction on voluntary intoxication. *Id.* ¶¶ 27, 34.

**{12}** We conclude that the statutory definition of aggravated fleeing does not fall within the narrow *Brown* exception. To be convicted of aggravated fleeing, a defendant must act "willful[ly]." Section 30-22-1.1(A)(1). But the mens rea of "willful[ness]" did not require proof that Defendant acted with subjective knowledge. *See State v. Rosaire*, 1997-NMSC-034, ¶ 7, 123 N.M. 701, 945 P.2d 66 (stating that " '[w]illfully' denotes the doing of an act without just cause or lawful excuse").

**{13}**     Defendant also relies on *Elonis v. United States*, 135 S. Ct. 2001 (2015), for the proposition that "a defendant generally must 'know the facts that make his conduct fit the definition of the offense,' even if he does not know that those facts give rise to a crime." *Id.* at 2009 (internal quotation marks and citation omitted). Defendant argues that this statement means that to convict him of aggravated fleeing, the jury was required to find that he *knew* that he was endangering the lives of other people, and that the denial of an instruction telling the jury so violated his rights to due process and to present a defense. We disagree. Defendant takes the statement from *Elonis* out of context. In the passage that Defendant cites, the Supreme Court of the United States was not imposing an unprecedented subjective-knowledge requirement on all elements of all criminal offenses, as Defendant seemingly contends, but was merely explaining that its previous decisions required the government to prove that a defendant had knowledge of "the facts that make his conduct fit the definition of the [crime]" in situations where the lack of such evidence would run the risk of convicting a defendant for innocent conduct. *Id.* at 2010-11 (internal quotation marks and citations omitted). The Supreme Court then stated that "[t]he 'presumption in favor of a scienter requirement should apply to *each* of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 2011 (internal quotation marks and citation omitted). *Elonis* does not support reading a subjective-knowledge requirement into "willfully and carelessly driving [a] vehicle in a manner that endangers the life of another person[,]" Section 30-22-1.1(A), because there is no danger that otherwise innocent conduct will be criminalized. Driving on the roads in a careless manner is not innocent conduct. *See* NMSA 1978, § 66-8-114(B) (1978) (criminalizing the operation of "a vehicle in a careless, inattentive or imprudent manner"). Much less was it innocent conduct for Defendant to possess illegal drugs, ingest them until he was intoxicated, and then drive while intoxicated.

**{14}**     Finally, Defendant argues that if voluntary intoxication is not a defense to the mens rea of "willfulness," the district court should have instructed the jury that voluntary intoxication was a defense to the requirement that he know that law enforcement had signaled for him to stop. We disagree. Here the jury was instructed, in accord with UJI 14-2217, that to convict Defendant of aggravated fleeing, the State must prove that "[t]he defendant knew that a law enforcement officer had given him an audible or visual signal to stop[.]" But this knowledge element does not make aggravated fleeing a specific-intent offense. *See State v. Beach*, 1985-NMSC-043, ¶ 12, 102 N.M. 642, 699 P.2d 115 (stating that the "knowledge" element in crime of second-degree murder "is not an equivalent mental state to the intent to do a further act or achieve a further consequence, and a knowledge element does not always make a crime one of specific intent"), *overruled on other grounds by Brown*, 1996-NMSC-073, ¶ 16; *see also Campos*, 1996-NMSC-043, ¶ 38 ("A crime defined as requiring the mens rea of knowledge, such as second-degree murder, does not require any further intent and therefore does not fall within the class of specific-intent crimes.").

**{15}**     In sum, aggravated fleeing is not a specific-intent offense, and it does not contain any subjective-knowledge element. The district court therefore did not err by declining to instruct the jury that voluntary intoxication was a defense to aggravated fleeing.

**II.     The district court did not commit fundamental error by not giving the jury a mistake-of-fact instruction, because a defendant's mistake of fact is not reasonable if it is based solely on voluntary intoxication**

**{16}**     Defendant argues that if he was not entitled to a voluntary intoxication instruction, the district court should have given a mistake-of-fact instruction instead. Defendant acknowledges that he did not propose a mistake-of-fact instruction to the district court, and we therefore review his claim for fundamental error. *See State v. Bunce*, 1993-NMSC-057, ¶ 1, 116 N.M. 284, 861 P.2d 965 (reviewing unpreserved claim that the district court should have given a mistake-of-fact instruction for fundamental error). Because we conclude that Defendant was not entitled to a mistake-of-fact instruction, the failure to give such an instruction was not even reversible error, much less fundamental error.

**{17}**     New Mexico recognizes the common-law defense of mistake of fact, which a criminal defendant may assert if he or she had "an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which [he or she was] indicted an innocent act[.]" *State v. Gonzales*, 1983-NMCA-041, ¶ 14, 99 N.M. 734, 663 P.2d 710; *see also Black's Law Dictionary* 1153 (10th ed. 2014) (defining "mistake of fact" as "[t]he defense asserting that a criminal defendant acted from an innocent misunderstanding of fact rather than from a criminal purpose"). District courts should instruct the jury on mistake of fact "when it negates the existence of the mental state essential to the crime charged." *State v. Contreras*, 2007-NMCA-119, ¶ 15, 142 N.M. 518, 167 P.3d 966 (internal quotation marks and citation omitted). But the district court need not give a mistake-of-fact instruction "where the intent element of the crime is adequately defined by the other instructions given by the trial court." *Bunce*, 1993-NMSC-057, ¶ 9.

**{18}**     Defendant argues that he was entitled to assert a mistake-of-fact defense "[b]ecause he was likely delusional and/or hallucinating, and at the very least was unable to clearly assess his surroundings or form rational thoughts" and therefore lacked the required mens rea to commit aggravated fleeing. Defendant appears to argue that due to his intoxicated state, a jury could find that he did not "willfully and carelessly" drive in a manner that endangered human life because he was unaware that he was driving dangerously, or that he did not know that he had been "given a visual or audible signal to stop" by law enforcement, or both. Section 30-22-1.1(A). Defendant further relies on *Contreras* for the proposition that he was still entitled to assert a mistake-of-fact defense even though his voluntary intoxication was the basis for his purported mistake. The State argues that a mistake-of-fact defense is not appropriate as a matter of law where it is based *solely* on a defendant's voluntary intoxication; that the aggravated fleeing statute contains no knowledge element; that the evidence here was not sufficient to support giving a mistake-of-fact instruction in any event; and that mistake-of-fact instructions were not appropriate in this case because the district court's instructions adequately defined the intent elements of the offense.

**{19}** We agree with the State that a mistake-of-fact defense is not appropriate where the mistake at issue was caused solely by the defendant's voluntary intoxication, and we therefore do not address the State's other proffered grounds for affirmance. To assert a mistake-of-fact defense, a defendant must have "an honest and *reasonable* belief in the existence of circumstances, which, if true, would make the act for which [he or she was] indicted an innocent act[.]" *Gonzales*, 1983-NMCA-041, ¶ 14 (emphasis added). Assuming, without deciding, that Defendant presented evidence sufficient to show that his intoxication caused him to genuinely believe that he was driving safely, or that someone other than law enforcement was signaling him to stop, we conclude that those beliefs were not objectively reasonable as a matter of law. Defendant does not point to any fact, other than his own voluntary intoxication, that contributed to his mistaken beliefs. To allow a mistake-of-fact defense in this circumstance, where the sole reason for Defendant's misperception of the true facts was his own voluntary decision to deprive himself of the ability to correctly perceive those facts, would be unreasonable. The common-law defense of mistake of fact was meant to protect defendants against good-faith mistakes, not self-induced ones. In addition, to recognize a mistake-of-fact defense to a general intent crime (like aggravated fleeing) based solely on a defendant's voluntary intoxication would effectively allow an end run around our Supreme Court's restriction of the voluntary intoxication defense to specific-intent crimes. This we will not do.

**{20}** To be sure, as Defendant points out, in *State v. Nozie*, 2009-NMSC-018, 146 N.M. 142, 207 P.3d 1119, and in *Contreras*, our Supreme Court and this Court considered voluntary intoxication as a relevant factor in evaluating whether a mistake-of-fact instruction should be given. But those cases are distinguishable because the defendant's voluntary intoxication was not the sole basis of the mistake-of-fact defense. In each of them, circumstances not caused by the defendant's culpable conduct combined with his voluntary intoxication to produce a situation in which a mistake of fact occurred.

**{21}** In *Nozie*, the defendant, who had been drinking heavily throughout the day, went to a Safeway grocery store with his wife and her sister after nightfall, and got into an argument with them that quickly turned violent. 2009-NMSC-018, ¶ 2. A store security guard, who was wearing black pants and a gray shirt, came out to investigate, and got into a physical altercation with the defendant, punching him several times. *Id.* ¶ 3. After that, the defendant walked over to a nearby vacant parking lot, where he was approached by a police officer who was wearing dark clothing, and who did not identify himself as a police officer. *Id.* ¶¶ 3-7. The defendant struck the officer in the eye, knocked him to the ground, and head-butted him several times. *Id.* ¶ 6. For this, the defendant was charged with aggravated battery on a police officer. *Id.* ¶ 9. The defendant asked for a mistake-of-fact instruction, arguing that he mistakenly thought the police officer was the private security guard from the grocery store, but the district court refused to give the instruction. *Id.* ¶¶ 10-11. On appeal, our Supreme Court held that the evidence was sufficient to support a mistake-of-fact defense, because a jury could have found that the defendant "was in a dazed, disoriented, and intoxicated state" and

believed that he was attacking a private security guard, not a law enforcement officer. *Id.* ¶¶ 33-35 (internal quotation marks and citation omitted).

**{22}** Similarly, in *Contreras*, the defendant was charged with breaking and entering into a motel room, and asked for a mistake-of-fact instruction, which was denied. 2007-NMCA-119, ¶¶ 1, 3. This Court held that the instruction should have been given, because: the defendant was intoxicated; he had paid for a room and was given a card key to room 125, which he therefore had permission to enter; the card key did not have the room number on it; he did not steal anything from room 121, the room that he had entered; he was in the bathroom in room 121 with his shoes off, from which a jury could infer that he was using it as a room for which he had paid; and the key to room 125 was found just outside room 121, from which a jury could infer that the defendant had tried to use the key to open the room door. *Id.* ¶¶ 2-3, 11.

**{23}** In both *Nozie* and *Contreras*, circumstances not of the defendants' own making combined with their voluntary intoxication to produce situations in which a reasonable mistake of fact could have occurred. In *Nozie*, the defendant had been punched several times by a security guard in a store parking lot after dark, and was walking away from there in a vacant parking lot when he was approached by a police officer on foot who was wearing dark clothing and who did not identify himself. In *Contreras*, the defendant had paid for a motel room and received a card key with no number on it, tried to use the room key on the wrong door, and was inside the room using it as a customer would ordinarily use a motel room when police arrived. Here, by contrast, no facts, other than Defendant's voluntary intoxication from using methamphetamines, could have contributed to Defendant's purported belief that he was driving safely, or that the people who were signaling him to stop were not law enforcement officers. Indeed, Defendant identifies no evidence supporting a reasonable belief either that he was driving safely or that he had not been signaled to stop. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments). And in any event, the record reflects that Defendant was driving at high rates of speed, swerving back and forth between lanes, and nearly crashing into other vehicles while yelling into a cell phone much of the time. Similarly, the record reflects that Defendant made eye contact with one of the pursuing officers through his rearview mirror and drove around a spike strip that police had placed on the road in an effort to stop him.

**{24}** We therefore reject Defendant's claim. The district court's failure to give a mistake-of-fact instruction sua sponte was not error at all, much less fundamental error.

**III.    The district court did not commit fundamental error by not instructing the jury on the lesser-included offense of resisting, evading, or obstructing an officer**

**{25}** Defendant argues that the district court should have instructed the jury on the misdemeanor offense of resisting, evading, or obstructing an officer, contrary Section 30-22-1, which is a lesser-included offense of aggravated fleeing. We reject this claim.

**{26}** We ordinarily review a district court's decision to deny a lesser-included offense instruction under the de novo standard of review. *State v. Munoz*, 2004-NMCA-103, ¶ 10, 136 N.M. 235, 96 P.3d 796. However, if a defendant has not preserved his or her claim that a lesser-included offense instruction should have been given, we do *not* review that claim for fundamental error, because the defendant may have strategic reasons for seeking, or not seeking, a lesser-included offense instruction. *See State v. Foster*, 1999-NMSC-007, ¶ 54, 126 N.M. 646, 974 P.2d 140 (stating that "we have declined to apply the doctrine of fundamental error to a defendant's choice of whether to have the jury instructed on lesser included offenses," and that appellate courts will not free defendants from the consequences of their choice to ask for, or decline to ask for, such an instruction), *abrogation on other grounds recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.

**{27}** Here, Defendant requested lesser-included offense instructions that were contingent on his argument that he was entitled to assert a voluntary intoxication defense to aggravated fleeing. Once the district court ruled that the defense was not available, he no longer asked for the instructions. Because Defendant asked for a lesser-included offense instruction only in the context of his voluntary intoxication defense, and once that defense was rejected he no longer asked for that instruction, we conclude that his claim is unpreserved.

**{28}** But even if we believed that his claim was preserved, or that we should review for fundamental error, as Defendant argues, we would still reject this claim because the evidence at trial did not support giving a lesser-included offense instruction. To be entitled to a lesser-included offense instruction, a criminal defendant must satisfy three requirements; he must show that: "(1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser." *State v. Meadors*, 1995-NMSC-073, ¶ 12, 121 N.M. 38, 908 P.2d 731.

**{29}** The parties do not appear to dispute that Defendant could not have committed aggravated fleeing without also committing the offense of resisting, evading, or obstructing an officer, and that the evidence at trial would have supported a conviction for the lesser-included offense. We agree that these elements were satisfied because, in general, resisting, evading, or obstructing an officer is a lesser-included offense of aggravated fleeing. *See State v. Padilla*, 2006-NMCA-107, ¶ 24, 140 N.M. 333, 142 P.3d 921 ("We agree that resisting/evading is a lesser included offense of aggravated fleeing"), *overruled on other grounds*, 2008-NMSC-006, ¶ 34, 143 N.M. 310, 176 P.3d 299.

**{30}** The State argues, however, that the third prong of the *Meadors* test is not satisfied. That prong requires Defendant to show that "the elements that distinguish the

lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser." *Meadors*, 1995-NMSC-073, ¶ 12; *see also State v. Hill*, 2001-NMCA-094, ¶ 17, 131 N.M. 195, 34 P.3d 139 (stating that to be entitled to a lesser-included offense instruction, a defendant must show that "there is a rational view of the evidence that would lead the jury to conclude beyond a reasonable doubt that [the d]efendant committed the lesser included offense while still harboring a reasonable doubt that [the d]efendant committed the charged offense").

**{31}** The only element of aggravated fleeing not included in resisting, evading, or obstructing an officer is "willfully and carelessly driving [a] vehicle in a manner that endangers the life of another person." *Compare* § 30-22-1.1(A), *with* § 30-22-1(B),(C). We agree with the State that no rational view of the evidence would lead a jury to conclude that Defendant was not "willfully and carelessly" driving in a manner that endangered the lives of others. In response to the State's argument, Defendant again relies on his voluntary intoxication and argues that it negated his subjective knowledge, but we have already rejected Defendant's arguments that willfulness required subjective knowledge, and that voluntary intoxication could negate the mens rea of willfulness. Defendant points to no other facts that could have caused a jury to entertain a reasonable doubt that Defendant was "willfully and carelessly" driving in a manner that endangered the lives of other people. The evidence at trial was that Defendant was driving at speeds far exceeding the speed limit, weaving back and forth, driving at times in the left lane, and that he nearly crashed into several vehicles. Based on this uncontradicted evidence, we conclude that even if Defendant's claim had been properly preserved, he was not entitled to a lesser-included offense instruction.

**{32}** Our holding on this point also disposes of three other related arguments that Defendant makes. First, Defendant argues that defense counsel committed ineffective assistance by not asking the district court to give the lesser-included offense instruction that he tendered, even though the district court rejected the voluntary intoxication defense on which that instruction was premised. Second, Defendant argues that while defense counsel properly submitted a lesser-included offense instruction based on Section 30-22-1(B), he should also have requested a lesser-included instruction based on Section 30-22-1(C), which states that a person may also commit resisting, evading, or obstructing an officer by "willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle[.]" Defendant argues that counsel's failure to do so also constituted ineffective assistance. Third, Defendant argues that the district court committed fundamental error by not instructing the jury on the lesser-included offense as defined in Section 30-22-1(C). Each of these claims fails because Defendant was not entitled to a lesser-included offense instruction under either Subsection (B) or (C) of Section 30-22-1 because there was no rational view of the evidence which could have caused a jury to find that he did not "willfully and carelessly" drive in a manner that endangered the lives of others. *See State v. Gonzales*, 1991-NMSC-075, ¶ 8, 112 N.M. 544, 817 P.2d 1186 (stating that where "no error" has occurred, there can be no fundamental error); *see also State v. Baca*, 1997-NMSC-059, ¶ 30, 124 N.M. 333, 950 P.2d 776 (stating that counsel is not

ineffective for declining to seek lesser-included offense instruction where no reasonable view of the evidence supports giving the instruction).

## IV. The district court did not abuse its discretion by excluding the testimony of Defendant's untimely-disclosed witnesses

**{33}** A week before trial, Defendant filed a supplemental witness disclosure with the names and telephone numbers of seven witnesses, but did not explain what testimony he expected them to give. The prosecutor moved to exclude them on timeliness and relevance grounds, explaining that he had been able to talk with two of them, and he thought the purpose of the testimony was to bolster Defendant's character. Defense counsel explained that he provided the witnesses' names to the State as soon as he knew about them, and explained that they had relevant evidence in support of Defendant's voluntary intoxication defense, because they knew him before the incident and had visited him at times during the five days after his arrest, and could testify about the extent to which his intoxication had impaired his ordinary mental capacity. The district court expressed strong doubts about whether this evidence was relevant, but ruled that the disclosure was too late, and that the witnesses would not be allowed to testify at trial.

**{34}** Defendant now claims that the district court erred by excluding these witnesses, arguing that they would have provided relevant testimony in support of his voluntary intoxication and mistake-of-fact defenses, that the State would not have been prejudiced had they been allowed to testify, and that his defense was prejudiced by the failure to allow their testimony. We review a district court's decision to exclude the testimony of untimely-disclosed witnesses for abuse of discretion. *See State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959.

**{35}** We need not decide whether the district court abused its discretion by excluding these witnesses on untimeliness grounds, because Defendant has failed to show any prejudice as a result of the exclusion order. The excluded witnesses did not see Defendant's dangerous driving and pursuit by police, but would only have been called to provide testimony in support of his voluntary intoxication and mistake-of-fact defenses based on their personal interactions with him both before and after the incident. But we have already held that Defendant was not entitled to raise voluntary intoxication or mistake of fact as defenses in this case. The witnesses' testimony would therefore have been irrelevant in any event, and its exclusion could not have unfairly prejudiced Defendant. We therefore reject Defendant's claim and uphold the exclusion order.

## CONCLUSION

**{36}** We affirm the judgment and sentence.

**{37}** **IT IS SO ORDERED**.

**EMIL J. KIEHNE, Judge Pro Tempore**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**DANIEL J. GALLEGOS, Judge Pro Tempore**