This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-35738

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAVID GONZALEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals his conviction for involuntary manslaughter, contrary to NMSA 1978, Section 30-2-3(B) (1994), with a firearm enhancement. On appeal, Defendant argues the district court (1) erred by refusing to instruct the jury on misdemeanor negligent use of a deadly weapon as a lesser-included offense of involuntary manslaughter; and (2) improperly instructed the jury with respect to

continuing their deliberations after they had reached an impasse on the involuntary manslaughter charge. We affirm.

## BACKGROUND

**{2}** The material facts were largely undisputed. Defendant, his wife Alyssa, and three friends returned to Defendant's residence around 9 p.m. or 10 p.m. after going up to the mountains. Defendant had been drinking beer along the way. Sometime between 10:30 p.m. and 11 p.m. another friend, Devin Ellis, called and asked if he could join them. Devin arrived at the residence with more beer and a new Springfield 9 mm semiautomatic handgun. Devin was a former police officer and had a habit of carrying a loaded gun with a round chambered. Defendant's friend Tommy removed the ammunition clip, cleared the chamber, and made sure the gun was not loaded by "dry-firing" it. The gun and the clip were passed to Alyssa, who wrapped the pieces in a blanket on her lap. Alyssa later placed the blanket on the couch and sat in front of the couch, playing a game on her cell phone. Defendant and Tommy took turns going into the kitchen to get more beer. The last time Defendant came out of the kitchen the gun was no longer wrapped in the blanket. Defendant testified that he saw the gun was out, either on the couch or the coffee table. The clip was not in the gun. Defendant, who had served as a member of the National Guard, picked up the gun, pointed it at Devin, and pulled the trigger, killing Devin.

## DISCUSSION

### I.     Lesser-Included Offense Instruction

**{3}** Defendant claims he was entitled to have the jury instructed on misdemeanor negligent use of a deadly weapon as a lesser-included offense of involuntary manslaughter. "We review the propriety of a district court's refusal to instruct on a lesser-included offense under a de novo standard." *State v. Munoz*, 2004-NMCA-103, ¶ 10, 136 N.M. 235, 96 P.3d 796. New Mexico uses the cognate approach to determine whether an offense is a lesser-included offense of another. *State v. Meadors*, 1995-NMSC-073, ¶¶ 6, 12, 121 N.M. 38, 908 P.2d 731. Our Supreme Court has held that a trial court should give the requested instruction on a lesser offense if

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense. . . ; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* ¶ 12.

**{4}** Assuming without deciding that Defendant is correct that, under the facts of this case, (1) he could not have committed involuntary manslaughter without also

committing negligent use of a deadly weapon; and (2) the evidence at trial was sufficient to sustain the conviction on the lesser offense, his argument nevertheless fails to satisfy the third prong of the *Meadors* test. If, as the State argues, the mental state required for both crimes is criminal negligence, then the only element that distinguishes the crime of involuntary manslaughter from negligent use of a deadly weapon is whether Defendant caused the death of Devin Ellis, and there is no evidence that causation was in dispute at trial. *See State v. Contreras*, 2007-NMCA-119, ¶ 25, 142 N.M. 518, 167 P.3d 966 (holding that the defendant was not entitled to a lesser-included offense instruction under the cognate approach where there is no dispute concerning the distinctive element between the greater and lesser offense).

**{5}** Defendant did not substantively address the third prong of the *Meadors* test in his briefing. Instead, he focused on the mens rea element of the offenses, arguing that the criminal negligence standard does not apply to misdemeanor offenses and thus, only ordinary or civil negligence is required for misdemeanor negligent use of a deadly weapon. We decline to address this argument for a number of reasons. First, this argument was not raised in the district court, and we do not see that it was preserved for appeal. *State v. Bregar*, 2017-NMCA-028, ¶ 29, 390 P.3d 212 ("As we have stated, for an objection to preserve an issue for appeal, it must appear that the appellant fairly invoked a ruling of the district court on the same grounds argued in the appellate court." (alterations, internal quotation marks, and citation omitted)).

**{6}** Further, Defendant fails to explain how the mens rea element is at issue in this appeal—i.e., whether negligent use of a deadly weapon is a lesser-included offense of involuntary manslaughter in this particular case. Even if the crimes required proof of different mental states such that the mens rea of these offenses is also a "distinctive element" for purposes of the third prong of *Meadors*, Defendant fails to establish any dispute concerning this element. He concedes the jury's finding that Defendant acted with criminal negligence for purposes of involuntary manslaughter also established ordinary negligence for purposes of negligent use of a deadly weapon, and fails to establish a "view of the evidence that could sustain a finding that the lesser offense was the highest degree of crime committed." *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113. Thus, this argument affords no basis for reversal.

**{7}** For all of these reasons, we conclude that the district court did not err in refusing Defendant's requested instruction on negligent use of a deadly weapon in this case.

## II. Jury Deliberation

**{8}** Defendant claims the district court improperly instructed the jury with respect to continuing their deliberations after they had reached an impasse on the involuntary manslaughter charge. "[W]hen a statement is submitted to the court by the jury during deliberations concerning the inability of the jury to arrive at a verdict, together with a disclosure of the numerical division, the judge must communicate with that jury in some fashion." *State v. Juan*, 2010-NMSC-041, ¶ 17, 148 N.M. 747, 242 P.3d 314 (emphasis, internal quotation marks, and citation omitted). The judge is not permitted to issue a

"shotgun instruction," i.e., an instruction that the jury must deliberate further, but is permitted to inform the jury that it may consider further deliberations. *Id.* (internal quotation marks and citation omitted); *see, e.g.*, *State v. McCarter*, 1980-NMSC-003, ¶¶ 4-8, 93 N.M. 708, 604 P.2d 1242 (holding that the district court's note to the jury stating, "You must consider further deliberations[,]" was an improper shotgun instruction). However, a new trial is required only if the trial court's actions "coerced the jury into arriving at a verdict." *Juan*, 2010-NMSC-041, ¶ 19.

**{9}** Here, the jury began its deliberations just before 4:00 p.m. and sent the following note to the judge around 7:11 p.m.: "[W]e the jury have come to a decision of the second degree murder charge. We, the jury have come to an impasse on the involuntary manslaughter charge. What are your instructions on this impasse?" Defense counsel responded to the judge by stating that the jury has to rely on the evidence and instructions, and "[a]t some point, however, if they can't reach an agreement . . . [on involuntary manslaughter] . . . that's where they are stuck." At 7:26 p.m. the judge read the note it was going to give to the jury:

> Jurors, please let me know with a note to the bailiff what the vote is on the involuntary manslaughter charge without disclosing which way the vote is going then continue to deliberate for a while longer. Rely on instructions already given to you and on the evidence.

Defendant did not object to this instruction or otherwise add to his previous comments on this point.

**{10}** At 7:59 p.m. the court went back on the record and indicated that 45 minutes ago he sent the note to the jury and that they said it was a 9-3 split, not indicating the direction. The judge announced "what I intend to do is call the jury out and ask them in which direction they are going and if they haven't made any progress declare a mistrial." At this point defense counsel for the first time raised the issue of "what [we] need to do in this situation." Relying on *Juan*, 2010-NMSC-041, defense counsel stated that the jury should be instructed that they may discontinue deliberations. The judge ordered the jury to be brought back, stating that it was going to declare a mistrial if there was no verdict on the involuntary manslaughter charge. The court was then informed that the jury had reached a verdict of guilty on the involuntary manslaughter charge.

**{11}** Because Defendant did not object to the initial instruction in response to the impasse note, we consider whether it amounted to fundamental error. *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused").

**{12}** Here, the district court promptly responded to the jury's question and asked the jurors to deliberate "for a while longer." In *State v. Salas*, 2017-NMCA-057, ¶ 37, 400 P.3d 251, the district court called the jury back to the courtroom at 5:10 p.m. on a

Friday, and relayed logistical concerns about allowing deliberations to continue. "The district court instructed the jury that it could deliberate for twenty more minutes and, if [no verdict was reached], deliberations would resume on the following Monday." *Id.* "The jury returned a verdict within the amount of [time] allotted." *Id.* This Court determined that no fundamental unfairness occurred because it did not pressure hold-out jurors to conform and did not threaten them with a mistrial. *Id.* ¶ 38. Similarly here, the instruction to "continue to deliberate for a while longer" is not comparable to a directive to continue until the jury reached a verdict, and the jury was never informed that the district court was considering a mistrial. *Cf. Juan*, 2010-NMSC-041, ¶ 19 (reversing and remanding for a new trial where the trial court failed to answer the jury's question regarding the option of a "hung jury" for over two hours, coupled with the duration and time of day of the jury's deliberations, "left the jury with the impermissible impression that it must continue its deliberations indefinitely until the minority juror or jurors abandoned their convictions to arrive at a verdict with the majority" (alteration, internal quotation marks, and citation omitted)). We determine that no fundamental error occurred.

**CONCLUSION**

**{13}** We affirm Defendant's conviction.

**{14}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**